(92 Misc. Rep. 50)
### PEOPLE ex rel. BRADY v. MAHER.

(Court of General Sessions of the Peace, New York County.   October 8, 1915.)

1. CRIMINAL LAW ☞260—JUDGMENT OF MAGISTRATE'S COURT IN COUNTY OF NEW YORK—REVIEW BY COURT OF GENERAL SESSIONS.

Before a conviction in a Magistrate's Court in the county of New York can be reviewed on appeal in the Court of General Sessions, an alleged error in the proceedings of conviction or commitment must be brought to the attention of that court by an application for the allowance of an appeal, which may be allowed for an erroneous determination of law or fact upon a trial, if in the opinion of the Court of General Sessions the appeal presents a question proper for its decision.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 567–609; Dec. Dig. ☞260.]

2. CRIMINAL LAW ☞260—TRIAL—ISSUES.

An issue of fact can only arise either upon a plea of not guilty or upon a plea of former conviction or acquittal of the same crime, and an issue of law can arise only upon a demurrer.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 567–609; Dec. Dig. ☞260.]

3. CRIMINAL LAW ☞260—SUMMARY TRIAL—JUDGMENT—SUSPENSION OF SENTENCE—AFFIRMANCE.

Under the statute providing that, on the hearing of an appeal, the Court of General Sessions shall give judgment without regard to technical errors or defects, which have not prejudiced the substantial rights of a defendant, and may render the judgment which the court below should have rendered, or, according to the justice of the case, affirm or reverse in whole or in part, or order a new trial either in the court below or before it, or modify the sentence, the Court of General Sessions cannot suspend sentence and place a defendant on probation, except where a new trial can be and is had before it, since a suspension of sentence, etc., is not the rendition of a judgment, and cannot set aside a sentence imposed after a plea of guilty, but can only modify; and it can only remand for recommitment where the commitment was unauthorized and can only award a new trial when it concludes that a judgment should be reversed, and then only where a trial rather than a proceeding has been had.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 567–609; Dec. Dig. ☞260.]

4. CRIMINAL LAW ☞258—MAGISTRATE'S COURT—SUSPENSION OF SENTENCE—PROBATION—STATUTES.

The Inferior Criminal Courts Act, defining the powers and jurisdiction of inferior courts of criminal jurisdiction in the city of New York (Laws 1910, c. 659, as amended by Laws 1912, c. 460, and Laws 1913, c. 372), providing by section 69 that whenever a female over 16 is convicted in the city of New York of vagrancy under Tenement House Law (Consol. Laws, c. 61) § 150, the magistrate might commit to certain institutions, not including the county jail, and by subdivision 5 that, except in the case of those convicted under section 150, he might suspend sentence or place on probation, was not repealed by implication by Tenement House Law, § 150, as amended by Laws 1915, c. 286, not changing the definition of vagrancy or the punishment, but providing that every female convict may be placed upon probation, except when the offense was that of keeping or maintaining a house of prostitution, assignation, or ill fame in a tenement house, or when she has been previously convicted of any crime, since the latter general law did not conflict with the earlier local law, so that a city magistrate had no authority to suspend sentence and place on

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

probation a female convicted of vagrancy under section 150 of the Tenement House Law.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 545–561; Dec. Dig. ☞258.]

5. STATUTES ☞158—REPEAL BY IMPLICATION.
Repeals by implication are not favored.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 228; Dec. Dig. ☞158.]

Bessie Maher was convicted of vagrancy. From a judgment declining to place her on probation, she appeals. Affirmed.

Bertha Rembaugh, of New York City, for appellant.
Charles S. Bostwick, Asst. Dist. Atty., and Lamar Hardy, Corp. Counsel, both of New York City (John P. O'Brien and F. E. V. Dunn, both of New York City, of counsel), for respondent.

CRAIN, J. The appellant, upon her plea of guilty, was convicted on August 10, 1915, in a City Magistrate's Court, of vagrancy, as defined by section 150, chapter 99, of the Laws of 1909, as amended. She was sentenced to the Roman Catholic House of the Good Shepherd. She is now serving such sentence. She has appealed from the judgment of conviction. She claims that the return shows upon its face that the learned magistrate held that he was without power to suspend sentence and place her upon probation, and that, had he believed himself possessed of such power, he would have suspended sentence and would have placed her upon probation. The return sustains these contentions. She urges that the learned magistrate erred in holding that he was without such power, and she seeks to review and correct his alleged error on this appeal.

[1] Before a judgment of conviction had in a Magistrate's Court in the county of New York can be reviewed on appeal in the Court of General Sessions, an alleged error in the proceedings of conviction or commitment complained of must be brought to the attention of that court by an affidavit on an application for the allowance of an appeal, and an appeal may be allowed for an erroneous decision or determination of law or fact upon a trial, if, in the opinion of the judge of the Court of General Sessions, the appeal presents a question proper for decision by that court.

[2] The question at the threshold in this case is: Does the return, when read in connection with the affidavit upon which the appeal was allowed, show that there was an erroneous decision or determination of law or fact upon a trial? It does not, as the determination or decision complained of was not upon a trial. Appellant had pleaded guilty. There can be no trial where there is not an issue of fact or an issue of law. An issue of fact can only arise either upon a plea of not guilty or upon a plea of former conviction or acquittal of the same crime, and an issue of law only upon a demurrer. Had there been a trial, it would have embraced all proceedings down to and including what was done upon a suspension of sentence or a placing on

probation, or on the imposition of sentence. But in the case at bar, as stated, there being a plea of guilty, there was no trial.

[**3**] Were reviewable error, however, disclosed by the return, the statute defining the appellate jurisdiction of this court is not broad enough to afford appellant the relief which she seeks. This relief is either an unconditional release from the institution where she is confined under a partially executed sentence, or a release on a suspension of sentence by this court and a placing on probation. The law provides that upon the hearing of an appeal this court is to give judgment without regard to technical errors or defects which have not prejudiced the substantial rights of a defendant, and that it may render the judgment which the court below should have rendered, or according to the justice of the case affirm or reverse the judgment in whole or in part, or order a new trial either in the court below or before it, or modify the sentence. This court cannot, in the exercise of the power to render the judgment which the court below should have rendered, suspend sentence and place a defendant on probation. A suspending of sentence and a placing on probation are not the rendition of judgment. Such action is the deferring of judgment. It can only suspend sentence and place on probation where a new trial can be and is had before it.

This court can only rightfully reverse a judgment in whole or in part where the reversal is according to the justice of the case, and the justice of this case does not call for a reversal. The conviction is not assailed. It properly followed appellant's plea of guilty. For the purposes of an appeal, had there been no sentence, that conviction would have been the judgment. But, sentence having been imposed, the sentence is the judgment. The sentence was lawful. A lawful sentence, considered apart from a conviction, cannot be annulled or set aside. While this court may modify a sentence, the lawfulness of the sentence not being questioned, the court's power is limited to a modification. This court can only remand for recommitment where the commitment was unauthorized. No case is presented for the exercise of the court's power to modify the sentence, as, if judgment in the sense of sentence was to be pronounced upon appellant, the sentence imposed, which subjected her to the reformatory influences of a semi-religious institution of her faith, was both lawful and discreet. Before this court can exercise its power to award a new trial, it must reach the conclusion that the judgment is one which should be reversed; and where it reaches this conclusion it can only order a new trial where a trial has been had. The term "new trial" imports that a trial shall have been had. In the case at bar there was a proceeding, but, as stated, not a trial.

As in the case at bar, for the reasons stated, this court cannot exercise the power vested in it by statute to render the judgment which the court below should have rendered; as, secondly, it cannot reverse because a reversal would necessitate a discharge of the defendant, and, in the language of the statute, not be according to the justice of the case; as, thirdly, there having been no trial, it cannot order a new trial, and as, fourthly, for the reasons stated, it neither can nor should

modify the sentence—the only remaining action open to it, the appeal not being dismissible, is affirmance.

What has been said does not militate against the right of a defendant to appeal where a plea of guilty has been interposed, where the purpose of the appeal is not to set aside the conviction, but to modify the sentence. The fact, therefore, that if error was committed it was not upon a trial, coupled with the statutory restrictions upon the appellate action of this court, require the affirmance of the judgment, even were the ruling complained of erroneous.

[4, 5] Although this appeal could be decided on the ground mentioned, it is desirable to state the court's views upon the question argued. The ruling complained of was based upon subdivision 5 of section 89 of chapter 460 of the Laws of 1912, as amended by chapter 372 of the Laws of 1913, and chapter 454 of the Laws of 1914. That subdivision reads:

"The magistrate may, except in the case of females convicted under section 150 of chapter 99 of the Laws of 1909 as amended, known as the Tenement House Law, suspend sentence or place such female upon probation."

The appellant contends that the subdivision in question is to be regarded as impliedly amended by chapter 286 of the Laws of 1915. The material part of this last-named law provides that, if the person convicted is a female, she may be placed upon probation, except (a) when the offense was that of keeping or maintaining a house of prostitution, assignation, or ill fame in a tenement house; or (b) when the female has been convicted previously of any offense or crime.

Appellant contends that by virtue of this last-mentioned statute a discretionary power was vested in the magistrate to suspend sentence in her case and place her upon probation. The argument in support of the ruling made by the learned magistrate is that the law under which he acted was not expressly repealed by the law relied upon by appellant, and was not impliedly repealed by the latter law, as the former was a special and local statute, and the latter a general law.

On April 12, 1901, chapter 334 of the Laws of that year, entitled "An act in relation to tenement houses in cities of the first class," became a law, and with the exception of a small portion, unrelated to any question in the case at bar, went into effect. In title 3, section 141, it enacted that a person doing certain specified things in a tenement house should be deemed a vagrant, and upon conviction committed to a county jail, for a term not exceeding six months from the date of commitment. It continued unchanged until July 20, 1907, when it was amended by chapter 681 of the Laws of that year, which went into effect September 1, 1907. This law changed slightly the definition of vagrancy. It left the punishment unchanged. The next change came on March 20, 1909, when by chapter 99 of the Laws of that year, constituting chapter 61 of the Consolidated Laws, several changes were made. Among them section 141 became section 150. By it the definition of vagrancy was materially enlarged, but the punishment left unchanged. The next change was by chapter 598 of the Laws of 1913, which became a law and went into effect on May 17th of that year. The change was slight. It affected merely the definition of vagrancy.

The next and final change was effected by chapter 286 of the Laws of 1915, which became a law and went into effect on April 14th. It left the definition unchanged. It left the punishment unchanged, but provided, as stated, that except under certain specified circumstances, not present in the case at bar, a convict, if a female, could be placed on probation.

About nine years after the passage and taking effect of the Tenement House Law, and after it had been twice amended, the Legislature passed, on June 25, 1910, chapter 659 of the Laws of 1910. It took effect immediately upon enactment. It provided in section 88 for the commitment of persons convicted before New York City magistrates of vagrancy, and provided in that connection for three alternative punishments if the conviction was had in the boroughs of Manhattan and the Bronx—one being a commitment to the Roman Catholic House of Good Shepherd, as made in the case at bar. It conferred, when read in connection with section 98 of the act, power upon the magistrate convicting to suspend sentence and place the person convicted upon probation. None of the alternative punishments was a commitment to a county jail. This law remained unchanged until the passage of chapter 460 of the Laws of 1912, which altered, in a respect not material to any question on this appeal, section 89.

The next change was effected by chapter 372, Laws of 1913, which became a law April 28th, and went into effect on the 1st of the following July. This law took a charge of the nature of the one against appellant out of section 88, and brought it under section 89 as therein amended, and provided that, whenever a female other than a child under the age of 16 years in the city of New York is convicted of, among other things, vagrancy under section 150 of chapter 99 of the Laws of 1909, as amended, known as the Tenement House Law, the magistrate before whom such conviction is had shall, subject to the provisions of section 92 of the act, impose one of certain named penalties. These penalties embraced, with others, those named in the original law. None provided, upon conviction in Manhattan, Bronx, or Brooklyn, for a commitment to a county jail. Subdivision 5 of the section read on the subject of suspension of sentence and probation as stated. Section 92 of the act above referred to relates to the discharge of a person convicted before the expiration of sentence and is not material on any question raised on this appeal. This law of 1913 unchanged was extended to the borough of Queens by chapter 454 of the Laws of 1914, and is now in force unless, as urged by appellant, it has been in part repealed by implication by chapter 286 of the Laws of 1915.

While the Tenement House Law as amended defines certain kinds of vagrancy, the punishment which it prescribed for such vagrancy has not, since 1910, been applicable in New York City, where defendants were tried before city magistrates. This inapplicability affords reason for holding that the amended provision in such law for the disposition of convicts by suspension of sentence and placing on probation, as contained in chapter 286 of the Laws of 1915, is likewise inapplicable in trials for vagrancy before New York City magistrates.

Probation is for possible reformation, and it may be that the Legislature thought it unnecessary in a jurisdiction like New York City, where commitment could be made to reformatory institutions, while deeming it desirable in jurisdictions where commitment could only be made to a county jail.

When the Legislature of 1915 enacted, on April 14th, chapter 286 of the Laws of that year, it had under consideration an amendment to section 89 of the Inferior Criminal Courts Act. But such proposed amendment was not one conforming it to the provisions relating to the punishment and disposition of vagrants as found in section 150 of the Tenement House Law as amended. So having it under consideration, the Legislature voted to amend section 89 in a way which continued its unlikeness to section 150 of the Tenement House Law. It voted, moreover, to amend this section in a way which left it unlike chapter 286 of the Laws of 1915, and when such proposed amendment was disapproved by the mayor of New York the Legislature failed to pass it over the mayor's veto. Thereafter, in May, the Legislature amended in a number of respects the Inferior Criminal Courts Act, by chapter 531 of the Laws of 1915, without changing section 89 of the act. Thus both acts were before the Legislature of 1915 for consideration. It changed section 150 of the Tenement House Law. It unsuccessfully attempted to change section 89 of the Inferior Criminal Courts Act in a way which would have continued the differences between it and the Tenement House Law, and thereafter in a statute in which it made numerous amendments to the Inferior Criminal Courts Act it left section 89 of that act unchanged. The Legislature of 1915 was thus brought face to face with a situation, and, having considered it, acted after consideration, and no seeming or even real absence of reason for its action can afford ground for holding that it did not intend what it did, but intended the contrary. Its deliberate and considered action negatives the suggestion that the result of the legislation referred to was inadvertent, and not an expression of a purpose to withhold from city magistrates a right to suspend sentence and place on probation defendants convicted before them of vagrancy under section 150 of the Tenement House Law as amended.

Repeals by implication are not favored. The two acts can stand together. The Inferior Criminal Courts Act was enacted for New York City. It was entitled "An act in relation to inferior courts of criminal jurisdiction in the city of New York, defining their powers and jurisdiction and providing for their officers." Its purpose is sufficiently described in its title. It was part of a system of local judicial administration. It was intended to be exceptional. It can operate to the extent of its lesser scope without conflicting with the general law. The general act does not contradict the special and local law. Its purpose was to regulate in cities of the first class, in the interests of the public health, safety, and morals, the construction of those buildings described as tenement houses, to bring about certain structural changes in existing tenement houses, and to prohibit, on pain of punishment, the committal of certain acts in tenement houses. Meaning can be given to it without interpreting it as designed to affect the local law.

It does not deal directly with the subject of the special and local law, and will not be construed as intended to alter the more particular and specific provisions of the latter, but as silently excluding from its operation the cases of persons tried for vagrancy in City Magistrate's Courts in New York City.

Two cases are relied upon by the appellant, namely, the case of People v. Jaehne, 103 N. Y. 182, 8 N. E. 374, and the case of People v. Jensen, 99 App. Div. 355, 90 N. Y. Supp. 1062. In the Jaehne Case the two statutes under consideration were the Consolidation Act (chapter 410 of the Laws of 1882) and the Penal Code. In the Jensen Case the statutes under consideration were the Greater New York Charter (Laws 1901, c. 466) and the Penal Code. The Consolidation Act in the former and the Greater New York Charter in the latter were both special and local laws. The Penal Code was a general law. The Consolidation Act, passed after the Penal Code, was by enactment declared to be deemed, as between it and the Penal Code, the earlier enactment. The charter provision involved in the Jensen Case was a substantial re-enactment of a provision in the Consolidation Act, and by a statutory provision was made to relate back and speak as of the date of the Consolidation Act, and this, as stated, was declared by statute to be deemed, as between itself and the Penal Code, the earlier enactment.

Thus for the purposes of the decision in both the Jaehne and Jensen Cases the earlier statute involved was a special and local one, and the later statute the general one. In each of these cases, therefore, the situation in this respect was the same as in the case at bar, and the question for decision was the same in each as in the case at bar, namely, whether the provisions of the later general law repealed by implication the provisions in the earlier and special local law. Moreover, there was between those cases and the one at bar the additional similarity that in all three the statutory provisions passed upon had some relation to crime and punishment. In both the Jaehne and Jensen Cases the general statute was held controlling, and, as stated, they are cited and relied upon by appellant as authorities supporting by analogy her contention that the general statute, chapter 286 of the Laws of 1915, impliedly repeals the earlier local statute, subdivision 5, section 89, chapter 372, Laws of 1913.

Both cases are instructive. Neither is controlling. In the Jaehne Case Judge Andrews, after stating the question for decision, shows that by express enactment the Consolidation Act, while the later law, is subordinated to the Penal Code by the provision in it that as between them it is to be deemed the earlier statute, and by provisions in the Penal Code, and that this express subordination affords a reason for holding that as between them the Penal Code is controlling, and that this reason is re-enforced by a consideration of the history of the Penal Code. No similar provisions are found in the statutes involved in the case at bar.

In the Jaehne Case the statutes under consideration related to the crime of bribery. Bribery is a crime which may be committed anywhere in the state, and possesses the same characteristics and turpitude

when committed by public officials, no matter where committed. This circumstance is alluded to by Judge Andrews in his opinion, and may be said to form the remaining reason for the decision, as it led the court to hold that in the light of this fact it would be unreasonable to suppose that the Legislature intended that bribery should be punished in one way if committed by an official outside of New York City, and in another way if committed by certain officials in New York City. Just as the first reason for the decision in the Jaehne Case is absent in the case at bar, so is this second reason.

The offense of vagrancy as committed by appellant is local in character ; that is to say, not committable everywhere. It can only be committed in cities of the first class. It consists of acts supposed to be fraught with peculiar consequences when done in certain places, and, as the offense is localized, it was not unreasonable for the Legislature to make it punishable by commitment to certain local institutions where the offender is convicted of it before certain local magistrates.

Judge Andrews states the rule which, under circumstances, leaves an earlier and local law unaffected by a later general one, in the absence of express repeal or irreconcilable repugnancy, showing that where, as in the case at bar, the Legislature in passing the latter statute was not directly dealing with the subject of the earlier special and local law, and the special law, as in the case at bar, is part of a system of local administration, and a reasonable motive can be assigned for retaining the special and peculiar provisions of the special act, notwithstanding the enactment of a subsequent general rule covering the same subject, the special and local law will not be held to be repealed by implication. The decision in the Jensen Case was largely upon the authority of the decision in the Jaehne Case.

Judgment affirmed.